### COHEN et al. v. EDWARDS, Internal Revenue Collector.

(District Court, S. D. New York. February 7, 1919.)

INTERNAL REVENUE ⬤⟶25—ADULTERATED BUTTER—FINDING OF FACTS BY DE-
    PARTMENT—REVIEW.

> Under Act May 9, 1902, § 4 (Comp. St. 1916, § 5978), imposing a spe-
> cial tax on manufacturers of adulterated butter, the decision of the Com-
> missioner of Internal Revenue, pursuant to Act Aug. 2, 1886, § 14 (Comp.
> St. 1916, § 6226), that a substance is adulterated butter, where no un-
> fairness or irregularity is charged, is conclusive, and not reviewable by
> the courts.

At Law. Action by Samuel K. Cohen and Jacob K. Cohen, copart-
ners as the New York Butter Packing Company, against William H.
Edwards, Collector of Internal Revenue. On demurrer to complaint.
Demurrer sustained.

Joseph R. Truesdale, of New York City, for plaintiffs.

Francis G. Caffey, U. S. Atty., of New York City (Vincent H. Roth-
well, Asst. U. S. Atty., of New York City, of counsel), for defendant.

MAYER, District Judge. Defendant has demurred upon the ground
that upon the face thereof, the complaint does not state facts sufficient
to constitute a cause of action.

The complaint alleges that plaintiffs were and now are partners, do-
ing business under the name of New York Butter Packing Company;
that on February 10, 1916, the collector of internal revenue demanded
of plaintiffs $750 as a special tax as manufacturers of adulterated but-
ter; $500 of this sum representing the amount of the tax and $250
penalty.

Plaintiffs allege that the collector was without authority to exact or
collect the $750, and that neither during the period for which the tax
was assessed nor at any other time were they engaged in the business
of manufacturing adulterated butter.

The complaint then alleges that in March, 1916, they filed with the
collector a claim in writing for the abatement of the tax and penalty,
addressed to the Commissioner of Internal Revenue at Washington,
D. C.; that on or about February 7, 1917, they received notice that
the claim of abatement had been rejected, and on the same date they
received another demand for the payment of the tax and penalty; that
about May 23, 1917, they received notice that additional affidavits fur-
nished them had been considered and rejected; that about the same
date there was served upon plaintiffs a warrant of distraint averring
nonpayment of the tax and penalty, and authorizing the deputy collec-
tor to distrain upon and sell the property of the plaintiffs; that on May
25, 1917, and pending the return of the warrant, the plaintiffs were
served with another notice and demand, requiring them to pay the $750
above referred to. The complaint then sets forth that the $750 with
interest, making in the aggregate $862.50, was paid under protest on
May 25, 1917, and that on June 6, 1917, plaintiffs took an appeal to
the Commissioner of Internal Revenue.

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

There is no allegation in the complaint as to any lack of hearing, nor that any of the administrative decisions complained of were arbitrary. The complaint on its face clearly shows that plaintiffs and the officials (that is, the collector and the Commissioner of Internal Revenue) proceeded in due course along regular and orderly procedure. This action is in purpose and effect nothing more nor less than an attempt to review the finding of fact by the Commissioner of Internal Revenue that plaintiffs were engaged in the manufacture of adulterated butter under circumstances which subjected them to the tax and to the penalty for nonpayment thereof. The single point involved is whether the decision of the Commissioner upon the finding of fact may be attacked in an action such as this.

Section 4 of the Act of May 9, 1902 (32 Stat. 194, c. 784 [Comp. St. §§ 5968, 5978, 6233–6238]), defines adulterated butter and sets forth the requirements laid upon manufacturers thereof. Under this section of the act a tax is assessed. Section 14 of the Act of Congress approved August 2, 1886 (24 Stat. 212, c. 840 [Comp. St. § 6226]), provides as follows:

"That there shall be in the office of the Commissioner of Internal Revenue an analytical chemist and a microscopist, who shall each be appointed by the Secretary of the Treasury, and shall each receive a salary of two thousand five hundred dollars per annum; and the Commissioner of Internal Revenue may, whenever in his judgment the necessities of the service so require, employ chemists and microscopists, to be paid such compensation as he may deem proper, not exceeding in the aggregate any appropriation made for that purpose.

"And such Commissioner is authorized to decide what substances, extracts. mixtures, or compounds which may be submitted for his inspection in contested cases are to be taxed under this act; and his decision in matters of taxation under this act shall be final.

"The Commissioner may also decide whether any substance made in imitation or semblance of butter, and intended for human consumption. contains ingredients deleterious to the public health; but in case of doubt or contest his decision in this class of cases may be appealed from to a board hereby constituted for the purpose, and composed of the Surgeon General of the Army, the Surgeon General of the Navy, and the Commissioner [now Secretary] of Agriculture; and the decisions of this board shall be final in the premises."

Section 4 of the Act of May 9, 1902, makes the provisions of section 14 of the Act of August 2, 1886, applicable to manufacturers of adulterated butter—

"to an extent necessary to enforce the marking, branding, identification, and regulation of the exportation and the importation of adulterated butter." Comp. St. § 6238.

It can be seen that the object of inserting the provision in section 7 of the Act of May 9, 1902, was to make applicable to the so-called "Adulterated Butter Act" the remedial provisions of the Act of August 2, 1886, the Oleomargarine Act, contained in the fourteenth section (inter alia) of that act.

Section 14 of the Act of August 2, 1886, supra, provides a careful and complete administrative machinery for determining what substances, extracts, mixtures, or compounds, which may be submitted to the appropriate officials, are to be taxed under the act. Obviously it

was realized that the large number of cases of this kind should not be passed upon by the courts in so far as such court action was invoked to determine the facts. Congress, of course, could have made its own definition in respect of numerous details, but it preferred the wiser procedure which the statute sets forth. Whatever review may be had by direct suit or action, or by any other method, in those cases where the constitutionality of such a statute is attacked, or where it is claimed that no hearing was accorded, or where the conduct of the administrative officer was such that it can be characterized as arbitrary as matter of law, it is at least certain that where there has been a hearing on contested facts, and arbitrary conduct in the legal sense is not complained of, the decision of the Commissioner is final.

The cases to the foregoing effect are so numerous, when dealing with various statutes in which the same question has arisen, that it is unnecessary to cite them at length. It is sufficient, for the purposes of this case, to refer to Cooperville Co-operative Creamery Co. v. Lemon, 163 Fed. 145, 89 C. C. A. 595.

Holding that the administrative decision complained of is not reviewable, the demurrer must be sustained, and the complaint dismissed.